Turning to the regular calendar, I understand all parties are here, so I will turn to the first case, FPP v. Xaxis. You can take the podium. Thank you, Your Honor. Good morning. May it please the Court, my name is Ellen Ahrens, and I am here representing FPP, the appellant in this case. FPP asked for a reversal of the dismissal of the fraud claim and a remand for trial on the fraud claim, which did not occur in this case. Now, if we were to remand the fraud claim to the district court, since the district court has already decided that there was a meeting of the minds with respect to the most important paragraph that you're concerned about, and that pursuant to this important paragraph, your client is owed nothing, and you haven't appealed this finding. If we were to send this case back to the district court, what would you get? Well, in this case, we would get a trial on the fraud claim, which is not what happened, and that is different . . . . . . that was different than the one you understood you were signing. But the judge has found, and you have not appealed the idea that there was a meeting of the minds, that your client agreed to this paragraph, and that under the agreement, you are owed nothing. What's new? What's collateral? Sure. What's collateral here is that the representations that 24-7, which is Xaxis's predecessor company, made to FPP were fraudulent. They knew at the time that what they were saying was not true in two respects. They knew that the one-cent CPM charge was something that they used internally. They did not disclose that. And then they also knew that as the word methodology was used in the APA . . . But didn't you present this evidence at the trial? We did, but it is also important to . . . Isn't it . . . I think it's the case that Judge Hellestein wondered about the veracity of Mr. Robinson. Yes, he did. What would be new? What would be different? What would be different is that FPP would be allowed to present its fraud claim. In this case, this was a bench trial, so Judge Hellestein . . . Would there be any different evidence? In other words, even from your brief on appeal, it appears that your client didn't even know the fraud claim was dismissed until afterwards. And if that's the case, it tried the case as if there were a fraud claim. Presumably, it presented whatever evidence it had in support of its fraud claim. Is that not so? I respectfully disagree, Your Honor. In this case, because it was a bench trial, Judge Hellestein served not only as the gatekeeper for the evidence, but also the finder of fact. And if you look at the transcript, you'll see . . . What other evidence of fraud is there that you did not present, that you would present now? Well, Judge Hellestein prevented certain questions from being asked of Mr. Robinson. So, Mr. Robinson wasn't allowed to testify as fully as he otherwise would have. We also submitted a twenty-seven page offer of proof, which included twelve exhibits that were not submitted to the district court in this case. So, there are two . . . They were not submitted or they were rejected? They were not submitted. Give us an example of one of the questions. One of the questions? That Judge Hellestein . . . Sure. So, I think it's around page 392 or 395, where Mr. Mattel, who was trial counsel for FPP, asked . . . Why did you understand that this was based on advertising? And, Judge Hellestein said something like, that's not the right question, move on. And, what were the pieces of evidence that were not submitted and why weren't they submitted? They were not submitted because Judge Hellestein continued, as I said, cut Mr. Mattel off from questioning. The pieces of evidence include emails and, you know, other documentary evidence. One example is a PowerPoint presentation that shows, in fact, that FPP . . . or, excuse me, 24-7 was calculating the earn-out provision based on the understanding of FPP, not 24-7, as it argued before the district court. And, why wasn't that offered? It seems to me it's very important and dispositive. Why wasn't that offered? I think in the course of this trial, there were, as I said, Judge Hellestein prevented a lot of questions. And so, there's only . . . This wasn't attempted to be offered? I don't believe that it was. But, Judge Hellestein continued to . . . was very forceful in directing the course of this trial. And, even during objections, which I think Mr. Corcoran would agree, one party would object and the other attorney would try to explain. And, he said, I don't want any argument. And so, I think, you know, we've all been in trials. There's only so many times you can anger the district judge. And, there's no . . . especially in this case where he's the finder of fact. He found that Mr. Robinson was not credible . . . Yes. . . . as to what he understood. Aren't you bound by that? And, wouldn't that preclude a fraud finding at this point? I don't think so, because of the other evidence that could come in. Credibility is a multi-faceted determination. You think that with this other evidence, that you haven't really identified, that Judge Hellestein would change his mind and say, no, now I think that Robinson is credible? I think he might. And, I also think it might be worthwhile to send this case to a different district court judge who doesn't have those preconceived notions. So that . . . Did you make that request? We didn't, but I'm making it now. I think that it's important that FPP get a full and fair trial on its claims. Well, you just . . . that means you want a second bite at the apple? No, because there was no trial on the fraud claim. Judge Hellestein agrees. There was no trial on the fraud claim. So, that . . . You didn't know that, and you tried it as if there were a fraud claim in the case. But, Judge Hellestein prevented evidence from being admitted and prevented testimony based on his understanding that there was no fraud claim. So, when he says in the record, move on, that's not relevant, that's not the right question. He is saying, that's not relevant to the breach of contract claim. He is not making that determination as it relates to the fraud claim. Because, in his mind . . . Didn't he make the determination to dismiss the fraud claim before the start of the trial? I'm sorry? Didn't he make the determination to dismiss the fraud claim before the start of the trial? He did, but that was not clear to the parties at the time. In the context of the transcript, it sounds like he is saying, you know, what is your evidence on fraud? I'm not sure that that's enough. It will be dismissed. And, reading into the transcript, it sounds like he is saying, it will be dismissed if that's all you have. But, unlike some of the other cases that Zach has cited, at that time, he didn't have any evidence before him on either claim. And so, he wasn't . . . You know, it wasn't clear to the parties. And, that's especially true here, where FPP had three decisions. And, I see my time is up. So, I'll just briefly conclude. You're set. Thank you. FPP had three orders from Judge Swain, who is the prior district judge in this case, that said FPP did state a fraud claim as a matter of law. There was summary . . . no parties were entitled to summary judgment, but also on the fraud claim. And then, Zach says, move for reconsideration on summary judgment only as it relates to the fraud claim. And again, Judge Swain said, the fraud claim is going to trial. And, that's what FPP is asking for here. Thank you. Thank you. You've reserved some time for rebuttal. May it please the Court. My name is Paul Cochran. I represent ZAXIS, formerly known as 24-7. I must respectfully disagree with what my colleague said here about the fraud case evidence not having been presented. In fact, as Judge Chin pointed out, Mr. Mattel tried this case as if the fraud case was still very much a part of it. Not only do they admit in their opening brief that they had no idea that the fraud claim had been dismissed, but in his summation at the end, after he'd rested his case, Mr. Mattel got up and attempted to argue the fraud case that Judge Hellestein had said he was going to dismiss. Is that consistent with what counsel just said, that they didn't appreciate that the fraud claim had been dismissed? Well, for that very purpose, they put in all their evidence. There is no additional evidence. If you look at the proposed findings of fact and the pretrial order and their offer of proof afterwards, the evidence on their fraud claim was exactly the same evidence as the evidence on the breach of contract claim. That's why Judge Hellestein found that it was duplicative and that under New York law, it was not appropriate to try a fraud case with the breach of contract case. But Judge Swain had twice held that it would be appropriate. Judge Swain did do that. Unfortunately, we never had oral argument on those motions. They were done on papers, and Judge Hellestein, as a district court judge, was entitled to review that and come to a different conclusion, and he did, and he explained it. There's a suggestion in their briefs that they weren't given notice and an opportunity to be heard. That's just not the case. It's not clear that he dismissed the fraud claim at the outset. The court has tried it as if the fraud claim was still in the case. So it is muddled. It's muddled in Mr. Mattel's mind. If you look at the transcript and summation, when the judge raised the issue, Mr. Mattel said, I want to address the fraud case. Judge Hellestein said, well, I believe I dismissed that. I said, that's right, we didn't litigate it, to which Mr. Mattel responded, yes, we did. I put in my evidence on the fraud case. So it may have been muddled in Mr. Mattel's mind, but we weren't trying the fraud case. But it wasn't really relevant because the fact of the matter was that it was the same issue. When Judge Hellestein asked Mr. Mattel in advance of trial on two separate occasions to explain why the fraud claim wasn't duplicate of the breach of contract claim, he couldn't do it. He told the judge that he was going to show that there was a misrepresentation as to what the actual fee would be, what the CPM would be for basic video media, and that there was some misrepresentation as to intent to give actual advertisers fees. That was exactly what was tried on the breach of contract claim. It would have been much clearer and simpler to have ruled on the fraud claim at the end of the trial. I suppose it would have, but Judge Hellestein did in fact put a footnote in which he explained why he had dismissed it. And I would point out that it was not just because of the merger clause and not just because of his finding before, but he cited a case that said under New York law, if there is a conflict between the written agreement and the allegation of fraud, you can't rely. The written agreement controls. And here, their whole alternative theory for the fraud claim, which Judge Hellestein dismissed as duplicative, was that if the contract is exactly what the 24-7 says it is, then we were defrauded. Well, if the contract said exactly what we said it said, then it's clear on the papers. You can't have a reliance on an inconsistent representation and make out a fraud case under New York law. But let me get back to what was tried here. For nine days, we tried this case before Judge Hellestein. The five of those days focused on Mr. Robinson's testimony that he was misled about what he was getting for the CPM for basic video media. He claimed that he was told he was getting all advertiser fees. And then he testified that in the last few days, there was an exchange of e-mails in which 24-7 promised to give him the actual fees as he requested. And he claimed that confirmed the fact that he was misled. And Judge Hellestein found that he was incredible on both of those representations. His position was totally inconsistent with the documents. All the documents in the case showed that he knew exactly what he was getting. Basic video media fees, far from being what they suggest in their brief, the most significant category, was the least significant category of the net revenue component. If you look at the documents that Judge Hellestein relied upon in concluding that Mr. Robinson was incredible, at S.A. 153-154 is a November 1st projection sheet that was given to Mr. Robinson a few weeks before they signed the agreement. And the projection sheet specifically points out that the CPM that advertisers would be projected paying would be $13. And the CPM that FPP would get for basic video media fees would be 1.75 cents of that $13. It's clear as a bell in the document. And what did Mr. Robinson tell the court? He said, oh, I didn't read that. Mr. Robinson, who was a financial analyst in his earlier career and who was doing this deal, claimed that he didn't read the document that told him exactly what he would get for basic video media fees. And then they tell you that basic video media fees was the most significant component. If you look at the same document, which is the projection sheet that Mr. Robinson had when he entered in this agreement, it tells you that basic video media fees is 5% of the projected revenues. The reason they didn't get an earn-out payment here was because the technology failed. The projections that the parties entered into the agreement on expected $10 million in revenues for this 2013 revenue year. The revenues turned out to be $1.7 million. $1.7 million fell far short of an earn-out payment. The earn-out payment would only be applicable if they realized more than $5 million in revenues. They didn't. The total revenues was less than $2 million. So there was no base for it. Judge Hellestein's decision not only found that Mr. Robinson was not credible in all of his points, but he went through each document and showed why what Mr. Robinson was saying was inconsistent with all the documentation in the case. He dismissed it as incredible. And that's binding. There's been no appeal here. If this were sent back, we'd get summary judgment on the fraud claim. Because it is res judicata now that the parties understood exactly what this deal was, and that Mr. Robinson was lying then, and he would be lying at a fraud case. So there's really no basis to send this back. It would be a futile thing to do since there's nothing left to decide on these issues. Thank you. Ms. Abrams, you have some three minutes for rebuttal. Thank you, Your Honor. What Zaxos' counsel just gave you is a summary judgment argument, which is what already happened in this case and was denied. The findings of fact and conclusions of law that Zaxos is asking you to make are within the province of the district court and did not happen in this case. Additionally, with respect to the summation, Mr. Mattel said he did say that there was some evidence of fraud. He didn't say I was allowed to put in all of my evidence. There is, as we have discussed, some overlapping evidence here. Why wouldn't the finding that Mr. Robinson was not credible be binding now, whether you call it res judicata or collateral estoppel? It's not binding because it's not a finding as it relates to the fraud claim. The fraud claim was not fully litigated, which is what is required for res judicata and collateral estoppel. But since he was trying it, as you say, on the unfortunate assumption that the fraud claim had been dismissed, why wasn't all the evidence just put in? That's what I'm trying to understand. I understand. In this case, as I've said, Judge Hellerstein very actively prevented certain questions, not only from Mr. Mattel, but also from Mr. Corcoran across the board. It's a bench trial, so he was trying to stay focused on what the issues were that were relevant. What was relevant to him, not the fraud claim. Now, we all know that. So in this case, he prevented testimony from Mr. Robinson. As I said, that starts around page 392 and goes up to 420, although the first 15 pages are the most relevant. Mr. Robinson testified that he understood that they would be getting the higher rate, right? And whether you call it a contract claim or a fraud claim, he said that was his understanding. And based on the documents, which apparently showed that, in fact, it was the lower rate, I mean, how do you get around that now? I mean, how could there be a different finding now? Because the fraud claim is separate from the breach of contract claim. But it's going to be based on the same arguments. That is, I didn't understand, I was misled. But the documents conflict with his assertion that he was misled. Yes, and that's important for a contract claim. But in a fraud claim, that's based on the misrepresentations that 24-7 made to FPP. And just briefly before my time is up, I want to mention the sanctions that Zaxxas requests. That is not appropriate in this case. Sanctions must be filed as a separate motion under Rule 38. That procedure was not followed here. But more importantly, there's no basis for sanctions. We appealed this case as a matter of right, as we're entitled to. There was no trial on the fraud claim, which is what we were expecting. And the fact that Zaxxas disagrees with FPP's position is not worth sanctions. Their argument is not based on bad faith or a frivolous case. It's merely that they disagree with our position, which is not sanctionable conduct. Thank you for your time. Do you admit, in the moment remaining, that the judge telegraphed his view that the fraud claim would not survive a couple of times, even before the trial? I think that he telegraphed, he did telegraph his presumption before he heard the evidence. But especially in this case, where the parties had three different decisions that said that the fraud claim is going to trial. From a previous judge. Right. But if Judge Hellerstein wanted to reverse Judge Swain's rulings, which I agree is within his discretion, but he has to explain that under law of the case. There have to be cogent and compelling reasons. And those reasons are . . . It wasn't enough when he said, I believe this is duplicative? No, because that is exactly the opposite of what Judge Swain holds. So there's no reason . . . He doesn't articulate a reason to disagree with Judge Swain. There was no new case law. There was arguably some additional evidence, but he didn't cite any. And he told FPP he didn't consider their offer of proof, so he can't rely on that. And there's no suggestion that Judge Swain was wrong as a matter of law. There's plenty of Second Circuit case law that says that a fraud claim, especially fraud in the inducement, can be separate from a breach of contract claim. Thank you. Thank you. Thank you both. We'll reserve decision.